UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARYL LEE SCHEIB, | No. 2:14-CV-00337-JTR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF Nos. 14, 15.  Attorney David L. Lybbert represents Daryl L. Scheib (Plaintiff); Special Assistant United States Attorney Christopher J. Brackett represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for Summary Judgment, and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

### JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on February 14, 2011, alleging disability since February 27, 2005.[1]  Tr. 19.  The application was denied initially and upon reconsideration.  Tr. 159-66, 170-72.  Administrative Law Judge (ALJ) R.J. Payne held a video hearing on April 11,

_____

[1]At the hearing, Plaintiff's counsel amended the onset date to February 14, 2011, the application date.  Tr. 70.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

2013, Tr. 68-109, at which Plaintiff, represented by counsel, testified as did medical experts Anthony Francis, M.D., and Joseph Cools, Ph.D. The ALJ issued an unfavorable decision on April 26, 2013. Tr. 16-33. The Appeals Council denied review. Tr. 1-4. The ALJ's April 2013 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 15, 2014. ECF Nos. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 54 years old at the time of the hearing. Tr. 90. Plaintiff attended Central Washington University and graduated with a B.S. in business administration in March 2000. Tr. 91. Prior to attending college, Plaintiff worked as a construction laborer, heavy equipment operator, farm hand, and handyman. Tr. 91. After college, Plaintiff did office work for H&R Block and A to Z Business Consulting. Tr. 91.

Plaintiff testified that he is depressed and does not like to be around other people. Tr. 90-91. Plaintiff testified that he experiences pain in his lower back, which extends up to his shoulder blades and neck and down to his hips and legs. Tr. 93. Plaintiff usually takes Tylenol to alleviate his pain, but takes Aleve or Ibuprofen when his fibromyalgia flares up. Tr. 93. Plaintiff does not take prescription pain medicine. Tr. 95. Plaintiff has seen a mental health counselor for anger issues; Plaintiff believes his anger stems from his depression. Tr. 95-96. Plaintiff testified that, when he is depressed, he will sometimes forget to feed or walk his dog, forget to bathe, and not do laundry or clean his room. Tr. 96-97. Plaintiff stated that he would likely miss two to four days of work a week on account of being emotionally despondent. Tr. 102-03. Plaintiff testified that the

primary reason he can't work is because of anxiety and panic attacks.  Tr. 104.

Plaintiff can do some household chores, but doing chores typically makes his pain worse.  Tr. 94.  Plaintiff testified that he can sit for approximately twenty to thirty minutes at a time and could maybe sit for four hours in an eight-hour day.  Tr. 98.  Plaintiff has trouble standing, can walk two to three blocks before needing a break, and cannot twist or bend.  Tr. 99.  Plaintiff stated that he could work an eight-hour day doing work that involved bending, twisting, crouching, and working with his arms outstretched, but such work would immobilize him for three subsequent days.  Tr. 100.  Plaintiff can lift ten to twenty pounds without aggravating his symptoms.  Tr. 101.

Plaintiff spends most of his days propped up in his bed.  Tr. 102.  Plaintiff goes to church on Sundays and will sometimes go fishing for two to three hours at a time.  Tr. 105-06.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in

weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations.  20 C.F.R. § 416.920(a)(4).  If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. § 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On April 26, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 14, 2011, the amended alleged onset date.  Tr. 21.

At step two, the ALJ determined Plaintiff had the following severe impairments:  chronic pain due to fibromyalgia and degenerative disk disease; right shoulder impingement status post surgery; osteoarthritis of the right hand; affective disorder; anxiety-related disorder; and personality disorder.  Tr. 21.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 4

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 26.  The ALJ assessed Plaintiff's residual function capacity (RFC) and determined he could perform light work subject to the following:

> He has some limitations with use of the right upper extremity, with no more than frequent pushing and/or pulling; no more than occasional overhead reaching; and no more than frequent handling and fingering with the right hand.  He can frequently climb ramps or stairs, but no climbing ladders, ropes, or scaffolds.  He can occasionally stoop or crawl, and frequently kneel or crouch.  He should avoid concentrated exposure to extreme cold, vibration, or hazards such as machinery and heights.  He has a moderate limitation in the ability to maintain attention and concentration for extended periods.  He has no more than mild limitations in the ability to understand, remember, and carry out detailed instructions; work in coordination or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting.

Tr. 27 (footnotes omitted).

At step four, the ALJ concluded that Plaintiff was able to perform his past relevant work as an office assistant.  Tr. 31.

Alternatively, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform.  Tr. 31-32.  The ALJ did not specify any jobs, but suggested that Plaintiff was capable of most light work.  Tr. 32.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from February 14, 2011, through

the date of the ALJ's decision.  Tr. 32.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) rejecting the opinions of Plaintiff's treating and examining medical providers; (2) failing to conduct an adequate step four analysis; and, (3) failing, at step five, to identify specific jobs, available in significant numbers, which Plaintiff could perform given his functional limitations.

**DISCUSSION**

**A.    Evaluation of Medical Evidence**

Plaintiff argues the ALJ failed to accord adequate weight to the medical opinions of Plaintiff's treating and examining sources, including Drs. Thompson, Burdge, Duris, and Mr. Hoyer.  ECF No. 14 at 10-17.

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence."  *Howard ex. rel. Wolff v. Barhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Baxter v.*

*Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The ALJ gave weight to the opinions of the consulting medical experts, Drs. Francis and Cools, who concluded that Plaintiff was not disabled from either physical or mental impairments. To the extent that Plaintiff's treating and examining providers found to the contrary, the ALJ was only required to provide specific and legitimate reasons for rejecting such opinions.

### 1. Kristy Thompson, DO

Dr. Thompson was Plaintiff's primary care physician. Dr. Thompson completed a physical evaluation of Plaintiff on March 1, 2010. Tr. 362-66. Dr. Thompson diagnosed Plaintiff with chronic pain (mostly in his back) and fibromyalgia, bipolar disorder, and past polysubstance abuse. Tr. 364. Dr. Thompson found (1) Plaintiff's chronic pain and fibromyalgia caused moderate limitations in his ability to sit, stand, walk, lift, and carry, (2) Plaintiff's bipolar disorder caused moderate limitations in his ability to communicate and understand/follow directions, and (3) Plaintiff's history of polysubstance abuse caused marked limitations in his ability to communicate and understand/follow directions. Dr. Thompson found Plaintiff had restrictions in mobility, agility, and flexibility. Tr. 365. Dr. Thompson opined that Plaintiff was limited to sedentary work. Tr. 365.

Dr. Thompson completed a second physical evaluation of Plaintiff on February 4, 2011. Tr. 351-55. Dr. Thompson diagnosed Plaintiff with chronic back pain, right shoulder pain, and depression. Tr. 353. Dr. Thompson documented the treatment Plaintiff underwent to address his back pain, noting that Plaintiff's shoulder pain was "much improved" after his surgery in December 2010 and observing that Plaintiff's depression was "stable." Tr. 353. Dr. Thompson

found (1) Plaintiff's chronic pain caused moderate limitations in his ability to sit, stand, walk, lift, handle, and carry, (2) Plaintiff's right shoulder pain caused mild limitations in his ability to lift, handle, and carry, and (3) Plaintiff's depression caused mild limitation in his ability to understand and follow directions.  Tr. 354.  Dr. Thompson found Plaintiff had restrictions in mobility, agility, and flexibility.  Tr. 354.  Dr. Thompson opined that Plaintiff was limited to sedentary work.  Tr. 354.

In subsequent progress reports, Dr. Thompson continued to opine that Plaintiff's physical impairments limited him to sedentary work.  *See* Tr. 459 (dated August 16, 2011), Tr. 466 (dated January 25, 2012).[2]

The ALJ gave little weight to Dr. Thompson's opinion that Plaintiff was

_____

[2]The ALJ interpreted Dr. Thompson's January 2012 DSHS progress report as finding that Plaintiff was capable of light exertion.  Tr. 29-30 (citing Tr. 463).  The Court disagrees with the ALJ's interpretation of this report.

It is not entirely clear what portion of the document at Tr. 463 is merely the printed form, and what portion is case-specific language contributed by Dr. Thompson.  The form requires the medical provider to "[c]heck boxes describing activities the patient is physically capable of doing."  Tr. 463.  In the relevant section, the only box checked by Dr. Thompson is the limitation that "[t]he patient can sit for most of the day; walking or standing for brief periods."  Tr. 463.  This is consistent with Dr. Thompson's opinion at the end of the document that Plaintiff was capable of sedentary work.  Tr. 466.  Given that Dr. Thompson specifically found Plaintiff capable of sedentary work, Tr. 466, and that she further indicated that Plaintiff "can sit for most of the day; walking or standing for brief periods," Tr. 463, any inconsistency regarding Plaintiff's exertional limitations would appear to be inadvertent.  Consistent with her other opinions, Dr. Thompson clearly thought Plaintiff was only capable of sedentary work.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

limited to sedentary work.  Tr. 29.  The ALJ reasoned that these opinions were not supported by Dr. Thompson's objective findings from her physical exams of Plaintiff where Dr. Thompson found "diffuse tenderness to palpation of the thoracic and lumbosacral spine, . . . decreased range of motion, normal sensation and strength, and . . . able to walk without a limp."  Tr. 29; *see* Tr. 353, 364, 459, 466.

The ALJ provided specific and legitimate reasons for giving little weight to Dr. Thompson's opinions.  As noted by the ALJ, Dr. Thompson's physical exams of Plaintiff revealed minimal objective findings.  *See* Tr. 353, 364, 459, 466.  An ALJ may reject a medical opinion that is "inadequately supported by clinical findings."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Furthermore, the lack of objective findings is internally inconsistent with Dr. Thompson's opinion that Plaintiff is limited to sedentary work, which is another valid reason to give the opinion less weight.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Although Plaintiff's interpretation of Dr. Thompson's opinions to support greater limitations is not unreasonable, the Court will not reverse the ALJ's findings when the evidence is susceptible to more than one interpretation.  *Tackett*, 180 F.3d at 1097.

### 2.  Aaron R. Burdge, Ph.D.

Dr. Burdge completed a psychological evaluation of Plaintiff on March 7, 2012.  Tr. 468-78.  Dr. Burdge diagnosed Plaintiff with several mental impairments including depressive disorder, NOS (chronic pain); anxiety disorder, NOS (with generalized and panic features); pain disorder associated with a general medical condition (back, per self-report); and, personality disorder, NOS (with antisocial features).  Tr. 473.  Despite earlier diagnoses, Dr. Burdge stated that he did not believe Plaintiff met the criteria for bipolar disorder.  Tr. 473.  Dr. Burdge opined that Plaintiff's prognosis was "guarded" and Plaintiff would be "unlikely to function adequately in a work setting until his psychological symptoms have been

1  managed more effectively." Tr. 473.  Dr. Burdge recommended Plaintiff take part

2  in cognitive behavioral therapy and pain management instruction.  Tr. 474.  In

3  areas of cognitive and social functioning, Dr. Burdge found Plaintiff mostly had no

4  limitations, but some mild limitations, and moderate limitations in his ability to

5  maintain appropriate behavior in a work setting and in his ability to complete a

6  normal workday and workweek without interruptions from psychologically based

7  symptoms.  Tr. 474.

8        The ALJ gave "no weight" to Dr. Burdge's opinions.  Tr. 31.  The ALJ

9  noted that Dr. Burdge's opinions were contradicted by contemporary treatment

10  records noting that Plaintiff's condition was stable and he reported being okay.  Tr.

11  31 (citing Tr. 285, 353, 397, 399, 448).  The ALJ reasoned that Dr. Burdge's

12  opinion was based on Plaintiff's presentation in a "one-time evaluation specifically

13  for the purpose of obtaining benefits."  Tr. 31.  The ALJ found Dr. Burdge's

14  assessment of moderate limitations inconsistent with the opinions of Dr. Cools and

15  unsupported by the longitudinal record.  Tr. 31.

16        The ALJ did not give specific and legitimate reasons for rejecting Dr.

17  Burdge's opinions.  Plaintiff's contradictory statements identified by the ALJ were

18  mostly made by Plaintiff over a year prior to his presentation to Dr. Burdge in

19  March 2012.  *See* Tr. 285 (February 2011), 353 (February 2011), 397 (May 2011),

20  399 (February 2011), 448 (July 2011 (citing past reports)).  The ALJ also erred in

21  using the fact that Plaintiff sought the evaluation for purpose of obtaining benefits

22  as a reason to discount Dr. Burdge's opinion.  *See Lester*, 81 F.3d at 832 ("[T]he

23  purpose for which medical reports are obtained does not provide a legitimate basis

24  for rejecting them.").  The fact that Dr. Cools, the consulting medical expert,

25  disagreed with Dr. Burdge's assessments does not constitute substantial evidence

26  to reject Dr. Burdge's opinions.  *See Lester*, 81 F.3d at 831 (The ALJ may give

27  weight to consulting opinions "only insofar as they are supported by evidence in

28  the case record.").  Finally, the ALJ's conclusion that the limitations assessed by

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

Dr. Burdge are not supported by the record is not accurate.  In formulating Plaintiff's mental RFC, reviewing sources Sean Mee, Ph.D., and Jerry Gardner, Ph.D., both found Plaintiff was moderately limited in his ability to (1) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (2) interact appropriately with the general public, and (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Tr. 136, 153.  These limitations are largely consistent with the moderate limitations assessed by Dr. Burdge.

On remand, the ALJ should incorporate into his RFC determination Dr. Burdge's opinion that Plaintiff is moderately limited in his ability to maintain appropriate behavior in a work setting and in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.  The ALJ should include these limitations in his hypothetical question(s) to the vocational expert (VE).

### 3.  Mark Duris, Ph.D.

Dr. Duris completed a psychological/psychiatric evaluation of Plaintiff on February 12, 2011.  Tr. 344-50.  Dr. Duris noted that Plaintiff's primary mental disorders were depression/anxiety and psychosis.  Tr. 346.  Dr. Duris stated that Plaintiff's "[d]epression and anxiety do not appear to keep [Plaintiff] from having sufficient energy, motivation, and concentration to function in a work environment at this time."  Tr. 346.  Dr. Duris further diagnosed Plaintiff with "Bipolar II Disorder Major Depressive and Hypomanic Episodes (controlled with medication)" and a number of substance abuse disorders in remission.  Tr. 347. Dr. Duris assessed mostly mild functional limitations but found Plaintiff moderately limited in his ability to communicate and perform effectively in a work setting with public contact and markedly limited in his ability to maintain appropriate behavior in a work setting and to communicate and perform effectively

in a work setting with limited public contact.  Tr. 347-48.  Dr. Duris noted that Plaintiff's medication improved his ability to function in a work environment.  Tr. 348.  Dr. Duris opined that Plaintiff's limitations would not last longer than six months.  Tr. 348.

Dr. Duris completed a second psychological/psychiatric evaluation of Plaintiff on July 19, 2011.  Tr. 448-55.  Dr. Duris found that Plaintiff was "relatively stable mental health wise."  Tr. 448.  Dr. Duris' diagnoses and observations were similar to those contained in his February 2011 evaluation.  Tr. 451.  Dr. Duris stated that Plaintiff depression "does not keep [Plaintiff] from having sufficient coping resources, energy, motivation, and concentration to function in a work environment at this time."  Tr. 451.  Dr. Duris assessed mostly mild functional limitations, but found Plaintiff moderately limited in his ability to understand, remember, and persist in tasks following complex instructions and to communicate and perform effectively in a work setting with public contact.  Tr. 452.  Dr. Duris concluded, "[Plaintiff] may be able to function in an entry-level work position with accommodation by the employer for mood and behavioral related symptoms."  Tr. 452.

The ALJ gave no weight to Dr. Duris' February 2011 evaluation in which Dr. Duris assessed numerous moderate and marked cognitive limitations.  Tr. 30-31 (citing Tr. 347-48).  The ALJ found Dr. Duris' opinions contradicted by contemporary records and noted that Dr. Duris found that Plaintiff's symptoms were controlled by medication.  Tr. 31.

The ALJ gave "some weight" to Dr. Duris' July 2011 evaluation.  Tr. 30.  The ALJ reasoned that Dr. Duris "placed undue reliance upon [Plaintiff's] subjective complaints . . . in a setting where he was being evaluated for the specific purpose of [whether he was entitled to State benefits]."  Tr. 30.  The ALJ found Dr. Duris' opinion that Plaintiff could only work with some employer accommodation inconsistent with Dr. Duris' assessment of only mild and moderate cognitive

ORDER GRANTING PLAINTIFF'S MOTION . . . - 12

1   limitations.  Tr. 30 (citing Tr. 452).

2        The ALJ did not err in rejecting Dr. Duris' February 2011 evaluation.

3   Inconsistency with the majority of objective evidence is a specific and legitimate

4   reason for rejecting physician's opinions.  *Batson*, 359 F.3d at 1196.  As noted by

5   the ALJ, in contemporaneous medical records, Plaintiff's treating sources noted

6   that his mental health impairments were stable and Plaintiff reported being okay.

7   Tr. 285, 353, 397, 399, 448.  Furthermore, the ALJ noted Dr. Duris' opinion that

8   Plaintiff's medications controlled his symptoms to the point that Plaintiff's

9   "[d]epression and anxiety do not appear to keep [Plaintiff] from having sufficient

10  energy, motivation, and concentration to function in a work environment at this

11  time."  Tr. 346.  The fact that a condition can be remedied by medication is a

12  legitimate reason for discrediting an opinion.  *Warre v. Comm'r of Soc. Sec.*

13  *Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  The ALJ gave specific and

14  legitimate reasons for rejecting Dr. Duris' February 2011 evaluation.

15       Regarding Dr. Duris' July 2011 evaluation, the ALJ partially erred in giving

16  the opinion little weight.  The ALJ erred in using the fact that Plaintiff sought Dr.

17  Duris' evaluation for purpose of obtaining benefits as a reason to discount Dr.

18  Duris' opinion.  *See Lester*, 81 F.3d at 832 ("[T]he purpose for which medical

19  reports are obtained does not provide a legitimate basis for rejecting them.").  The

20  ALJ partially erred in finding Dr. Duris' evaluation internally inconsistent.  Dr.

21  Duris concluded that Plaintiff was capable of working only with employer

22  accommodation for "mood and behavioral related symptoms."  Tr. 452.  Dr. Duris

23  failed to explain how Plaintiff's "mood and behavioral symptoms," Tr. 452,

24  affected his ability to understand, remember, and persist in tasks following

25  complex instructions.  Indeed, no other medical source found Plaintiff moderately

26  limited in this respect and Plaintiff reported that his impairments did not

27  significantly affect his ability to follow instructions.  Tr. 227, 255.  The ALJ did

28  not err in finding Plaintiff's ability to understand, remember, and persist in tasks

following complex instructions internally inconsistent with Dr. Duris' opinion that Plaintiff could work with accommodation. But Dr. Duris' finding that Plaintiff was moderately limited in his ability to communicate and perform effectively in a work setting with public contact is consistent with Dr. Duris' conclusion that Plaintiff could only work with accommodations. Furthermore, both Drs. Mee and Gardner assessed a similar limitation. *See* Tr. 136, 154.

On remand, the ALJ should incorporate into his RFC determination Dr. Duris' opinion that Plaintiff is moderately limited in his ability to communicate and perform effectively in a work setting with public contact. The ALJ should also include this limitation in his hypothetical question(s) to the VE.

### 4. John Hoyer, M.Ed., LMHC

Generally, the ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a therapist. 20 C.F.R. § 416.913(d). An ALJ is required, however, to consider evidence from "other sources," 20 C.F.R. § 416.913(d); S.S.R. 06-03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232. An ALJ must give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993). Germane reasons to discount an opinion include contradictory opinions and lack of support in the record. *Thomas*, 278 F.3d at 957.

Mr. Hoyer completed a psychological/psychiatric evaluation of Plaintiff on March 12, 2010. Tr. 356-61. Mr. Hoyer observed Plaintiff having symptoms of many mental disorders including mood swings relating to depression and mania, social withdrawal, physical complaints, suicidal trends, thought disorder indicated by hallucinations, and anxiety. Tr. 357. Mr. Hoyer diagnosed Plaintiff with "Bipolar DO MRE Mixed with psychotic symptoms" and physical impairments including fibromyalgia, sciatica, hypertension, and GI problems. Tr. 358. Mr. Hoyer found Plaintiff's impairments would cause a number of moderate and

marked limitations in areas of cognitive and social functioning.  Tr. 359.  Mr. Hoyer opined that the degree of Plaintiff's functional limitations would be "unpredictable" and would vary depending on Plaintiff's "sleep, sudden mood swings, triggers, stress, hal[l]ucinations[,] and overall physical pain." Tr. 359.  Mr. Hoyer was unsure if mental health treatment could restore or substantially improve Plaintiff's ability to work.  Tr. 360.

The ALJ did not mention or discuss Mr. Hoyer's opinions.  This was an error as an ALJ is required to consider the opinions of "other" sources.  20 C.F.R. § 416.913(d).  On remand, the ALJ should evaluate Mr. Hoyer's opinions.

The Court notes that there are several reasons why the ALJ might give little weight to Mr. Hoyer's opinions.  For instance, Mr. Hoyer is not an acceptable medical source and his opinions were made almost a year prior to Plaintiff's alleged onset date (as amended by Plaintiff's counsel).  Furthermore, the only mental impairment Mr. Hoyer diagnosed was bipolar disorder.  Tr. 358.   The ALJ did not find bipolar disorder to be a severe impairment at step, a finding Plaintiff does not appear to contest.  As found by the ALJ, Tr. 24-25, there is ample evidence to support that Plaintiff's bipolar disorder is not severe.  *See* Tr. 76 (Dr. Cools opining that bipolar diagnosis unsupported as Plaintiff did not have "significant hyper manic episodes"), 473 (Dr. Burdge opining that Plaintiff's mood fluctuations more likely stem from past substance abuse and his personality disorder than from bipolar disorder).

**B.    Step Four**

Plaintiff argues that the ALJ erred by not including all of Plaintiff functional limitations in the ALJ's RFC determination and by finding Plaintiff capable of performing his past relevant work (PRW).  ECF No. 14 at 17-19.

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the

individual retains the capacity for sustained performance of the physical-mental requirements of jobs.").  In formulating a RFC, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities.  *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

In this case, the ALJ found Plaintiff had the RFC to perform light work subject to the following:

> He has some limitations with use of the right upper extremity, with no more than frequent pushing and/or pulling; no more than occasional overhead reaching; and no more than frequent handling and fingering with the right hand.  He can frequently climb ramps or stairs, but no climbing ladders, ropes, or scaffolds.  He can occasionally stoop or crawl, and frequently kneel or crouch.  He should avoid concentrated exposure to extreme cold, vibration, or hazards such as machinery and heights.  He has a moderate limitation in the ability to maintain attention and concentration for extended periods [and a number of mild non-exertional limitations].

Tr. 27 (footnote omitted).

Based on the discussion *supra*, the Court concludes that the ALJ's RFC determination does not include all of Plaintiff's non-exertional limitations that are supported by substantial evidence.  On remand, the ALJ should include the following limitations in his RFC determination:

- Plaintiff is moderately limited in his ability to maintain appropriate behavior in a work setting.  *See* Tr. 136, 153, 474;

- Plaintiff is moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.  *See* Tr. 136, 153, 474; and,

- Plaintiff is moderately limited in his ability to communicate and perform effectively in a work setting with public contact.  *See* Tr. 136, 153, 452.

Plaintiff argues that the ALJ should have found Plaintiff more limited in his

ability to handle and finger in his right hand.  ECF No. 14 at 18.  There is conflicting evidence concerning the severity of Plaintiff's ability to handle and finger with his right hand.  *Compare* Tr. 134 (right hand limited to "occasional" fingering and manipulation) *with* Tr. 151 (right hand limited to "freq[uent]" fingering and manipulation).  The ALJ resolved the ambiguity by including in his RFC determination that Plaintiff was limited to "no more than frequent handling and fingering with the right hand."  Tr. 27.  Plaintiff fails to show that the ALJ erred in making this finding.

Plaintiff further argues that, based on the testimony of Dr. Francis, the ALJ should also include a limitation that Plaintiff is unable "to reach at and above shoulder height."  ECF No. 14 at 18 (citing Tr. 27, 88).  But Dr. Francis' testimony is not conclusive on this limitation and Plaintiff cites to no other evidence supporting it.  Plaintiff fails to show that the ALJ erred in not including the limitation that Plaintiff is unable to reach at and above shoulder height.  *See Lester*, 81 F.3d at 831 (opinion of a medical expert does not constitute substantial evidence if the opinion is not supported by evidence in the record).

On remand, the ALJ shall incorporate the non-exertional limitations discussed *supra* into his RFC determination, as well as any other limitations the ALJ finds supported by substantial evidence.  With the incorporation of additional moderate, non-exertional limitations, it will be necessary for the ALJ to elicit testimony from a VE.[3]

---

[3]The parties dispute whether the ALJ erred by not eliciting the testimony of a VE.  ECF No. 14 at 19; ECF No. 15 at 12-13.

Generally, a VE's testimony is necessary "[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations."  *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988) (quoting *Desrosiers v. Sec'y of Health &*

ORDER GRANTING PLAINTIFF'S MOTION . . . - 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)); *see also* SSR 83–14 (VE testimony also necessary "[w]here the adjudicator does not have a clear understanding of the effects of additional limitations on the job base.").

In this case, it is not entirely clear whether VE testimony was necessary. The only non-exertional limitation found by the ALJ was a moderate limitation in Plaintiff's ability to "maintain attention and concentration for extended periods." Tr. 27. At least one court has suggested that the presence of a similar limitation necessitates VE testimony. *See Cavanaugh v. Colvin*, 2014 WL 7339072, at *5 (D. Ariz. Dec. 23, 2014) (holding that "a moderate limitation in pace is sufficiently severe to require the testimony of a VE" and noting that "the Grids do not adequately account for a moderate deficiency in concentration, persistence, or pace"). But the Court need not resolve this issue or determine whether the ALJ erred by not eliciting the opinion of a VE in this case. As discussed *supra*, the Court concludes that the ALJ erred by not including a number of other moderate non-exertional limitations in his RFC determination. Given the number of moderate limitations the Court finds supported by substantial evidence, there is little doubt that Plaintiff's combined non-exertional limitations "significantly limit[s] [his] range of work." *Burkhart*, 856 F.2d at 1340. On remand, the ALJ shall elicit the opinion of a VE to determine if Plaintiff can perform his PRW or other jobs that exist in significant numbers in the national economy.

On a final note, the Court is not entirely persuaded by Defendant's reliance on *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007) to argue that "the mere presence of a nonexertional limitation does not mandate use of a vocational expert." ECF No. 15 at 12-13. A number of courts, including courts within this district, have interpreted the Ninth's Circuit's *Hoopai* decision much more narrowly. *See*, *e.g.*, *Wright v. Astrue*, 2010 WL 2294533, at *5 (E.D. Wash. June 4, 2010) (noting that the *Hoopai* court "determined that a finding of mild to

ORDER GRANTING PLAINTIFF'S MOTION . . . - 18

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAlliser v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the medical evidence were properly evaluated. Further proceedings are necessary for the ALJ to evaluate Mr. Hoyer's opinions and to incorporate the non-exertional limitations discussed *supra* into his RFC determination (as well as any other limitations the ALJ finds supported by

---

moderate depression at step two was not a nonexertional limitation requiring testimony from a [VE] [at step five]"). The Court need not determine *Hoopai*'s application to this particular case as the issue of whether VE testimony was necessary is essentially moot given the fact that remand is necessary for a variety of reasons.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 19

substantial evidence).  The inclusion of additional non-exertional limitations in Plaintiff's RFC will require the testimony of a VE to determine whether Plaintiff is capable of performing his PRW or other work.

CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported not supported by substantial evidence and based in part on legal error.  On remand, the ALJ shall evaluate Mr. Hoyer's opinions.  The ALJ shall also formulate a new RFC determination consistent with this opinion, and if warranted, elicit the testimony of a medical expert to assist the ALJ in making such a determination.  The ALJ shall present the new RFC assessment to a VE to determine if Plaintiff is capable of performing his PRW or any other work existing in sufficient numbers in the national economy.  Accordingly,

**IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.    Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED July 21, 2015.



_____

JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 20